J-A01030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SCOTT R. DEBONIS, ESQUIRE, AS EXECUTOR OF THE ESTATE OF FAYE M. DAVIS, DECEASED, AND MILDRED HARRIS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| GREGORY A. GEORGE, M.D., GREGORY A. GEORGE, M.D., INC., JAMES EZI-ASHI, M.D. AND SAGAR V. VALLABH, M.D., P.C. | |
| Appellees | No. 907 WDA 2016 |

Appeal from the Order Entered January 15, 2015
In the Court of Common Pleas of Mercer County
Civil Division at No(s): 2011-156

BEFORE:  BOWES, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 26, 2017**

Appellants, Scott R. Debonis, Esq., executor of the estate of Faye M. Davis (Decedent), and Mildred Harris, Decedent's sister, appeal from the order entered on January 15, 2015 that granted summary judgment in favor of Appellees, Gregory A. George, M.D., Gregory A. George, M.D., Inc., James Ezi-Ashi, M.D., and Sagar V. Vallabh, M.D., P.C. (collectively Appellees).  We affirm.

The trial court summarized the facts in this case as follows:

> This case arises from [Decedent's death, which occurred on] January 2, 2007, as a result of a ruptured abdominal aortic aneurysm.  Decedent is survived by her sister, [] Mildred Harris.

---

*Retired Senior Judge assigned to the Superior Court.

[]Scott R. Debonis[, Esq.] was appointed [e]xecutor of Decedent's [e]state.

On December 12, 2003, Decedent visited Dr. Ezi-Ashi[, a licensed physician who specializes in the field of gastroenterology,] for abdominal complaints. Dr. Ezi-Ashi performed a physical examination that revealed "a pulsating mass about the region of the mid-abdomen, possibly [Decedent's] abdominal aorta, possibly an aneurysm." Dr. Ezi-Ashi noted that he "would like to schedule patient for a [computer tomography (CT)] scan of the abdomen to [rule out or rule in] abdominal aneurysm[.]" A copy of this record was sent to Decedent's primary care physician, Dr. George[, a licensed physician specializing in family medicine,] on December 15, 2003.

On December 19, 2003, Decedent underwent the CT scan that Dr. Ezi-Ashi ordered. The CT scan revealed a "5.1 cm abdominal aneurysm." Dr. Ezi-Ashi then performed an upper endoscopy and a colonoscopy on Decedent, and sent the biopsy results to Dr. George. [Appellants] allege[d] that neither Dr. Ezi-Ashi nor Dr. George informed Decedent of the biopsy results.

On June 14, 2005, Decedent visited Dr. George for a follow-up appointment regarding her hypertension. Decedent saw Dr. George several more times until July 7, 2006. In October 2006, Decedent visited Dr. Ezi-Ashi twice for abdominal complaints. After her visits, Dr. Ezi-Ashi sent to Dr. George a report wherein he noted that a CT scan was "normal," despite the CT scan actually showing the presence of an abdominal aortic aneurysm. [Appellants] allege, again, that [Appellees never] advised Decedent of her abdominal aortic aneurysm nor the need to progressively manage her hypertension to prevent growth or rupture of the aneurysm.

Decedent went to Sharon Regional Hospital on January 1, 2007 complaining of back pain on her right side that "radiate[d] to the right side of her abdomen." The [h]ospital diagnosed Decedent with a compression fracture and discharged her with instructions to follow-up with Dr. George. The following morning, on January 2, 2007, Decedent met with Dr. George[,] who again failed to advise her of the aneurysm or its possible association with back pain.

Later that afternoon, at 12:35 p.m., Decedent sought treatment at Sharon Regional Hospital. After looking at the previous day's imaging, a radiologist determined that "a large aortic aneurysm is present." Shortly after the diagnosis, Decedent's aneurysm ruptured in the presence of her sister. At 3:00 p.m. a code was called, resuscitation efforts failed, and ended at 4:05 p.m. Decedent passed away at 4:05 p.m. on January 2, 2007.

[Appellants initiated legal action by filing a complaint on December 3, 2008 alleging professional negligence against Sharon Regional Health System, Emergency Care Consultants, Regional Imaging Associates, Kathy McNutt, and Steven Muehlenbein. After discovery commenced, Appellants served various records requests upon] Dr. George and Dr. Ezi-Ashi, with which both physicians complied. [Appellants] made two records requests of Dr. George prior to the expiration of the statute of limitations. On September 11, 2008, [Appellants] requested medical records "from 01/01/06 through 02/01/07," which Dr. George sent within the month. On November 11, 2008, [Appellants] requested an itemized billing statement for services rendered on January 2, 2007, which Dr. George sent on November 12, 2008.

All other records requests of Dr. George and Dr. Ezi-Ashi were made after the expiration of the statute of limitations. On September 28, 2010, [Appellants] requested from Dr. George medical records for a CT scan performed sometime before October 2006. Dr. George made it known to [Appellants] that he had no such records on or around October 1, 2010. [Appellants] finally requested Decedent's full medical records from Dr. George on October 19, 2010. Originally, Dr. George's office manager mistakenly informed [Appellants] that the records had been destroyed. At Dr. George's deposition, it was discovered that the records were in the possession of his attorney, that the office manager was unaware of this and mistakenly assumed, and communicated to [Appellants], that the records were destroyed[. T]he records were later given to [Appellants] on February 5, 2013, pursuant to a [r]equest for [a]dmission.

When [Appellants] learned that Dr. George did not have possession of Decedent's medical records, they requested Decedent's full medical records from Dr. Ezi-Ashi on October 19, 2010. Dr. Ezi-Ashi failed to reply until [Appellants] made a

second request for Decedent's full medical records on November 9, 2010. On January 12, 2011, Dr. Ezi-Ashi [produced Decedent's full medical records to Appellants].

[Appellants commenced a separate action against Appellees by filing a praecipe for writ of summons on January 28, 2011. Thereafter, Appellants] filed their complaint on February 18, 2011 alleging, *inter alia*, medical negligence survival action, medical negligence wrongful death action, and negligent infliction of emotional distress claims against [] Dr. George and Dr. Ezi-Ashi. [Appellants claimed that Dr. George and Dr. Ezi-Ashi failed to properly notify, follow, and treat Decedent for an abdominal aortic aneurysm from December 12, 2003 until her death on January 2, 2007.] Dr. George filed a [m]otion for [j]udgment on the [p]leadings on June 22, 2011 [and] Dr. Ezi-Ashi filed a [m]otion for [j]udgment on the [p]leadings on July 13, 2011. Both motions asserted that [Appellants'] claims were barred by the statute of limitations. [The trial court denied both motions] on September 30, 2011. On September 11, 2014[] Dr. George filed a [m]otion for [s]ummary [j]udgment, and on October 17, 2014 [] Dr. Ezi-Ashi filed a [m]otion for [s]ummary [j]udgment. Both motions argued, again, that [Appellants'] claims [were] barred by the statute of limitations. [On December 17, 2014, the trial court entered its order granting summary judgment in favor of Dr. George and Dr. Ezi-Ashi and against Appellants.]

Trial Court Opinion, 12/17/14, at 2-5 (footnotes omitted).[1]

Appellant's raise the following issues on appeal:

_____

[1] Although the trial court partially consolidated Appellants' complaint against Dr. George and Dr. Ezi-Ashi with Appellants' complaint against Sharon Regional Health System, Emergency Care Consultants, Regional Imaging Associates, Kathy McNutt, and Steven Muehlenbein, the subsequent order granting summary judgment in favor of Dr. George and Dr. Ezi-Ashi constituted a final, appealable order. *See Malanchuk v. Tsimura*, 137 A.3d 1283 (Pa. 2016) (order granting summary judgment in one of two cases consolidated for purposes of discovery and trial is appealable immediately as a matter of right where complete consolidation had not occurred). The trial court and the parties have complied with Pa.R.A.P. 1925(b) and the matter is now ripe for consideration on appeal.

Whether the [t]rial [c]ourt erred in concluding, as a matter of law, that [Appellants'] cause of action was barred by the applicable statute of limitations/statute of repose[?]

Whether the [t]rial [c]ourt erred in interpreting the term "cause of death" as used in 40 P.S. § 1303.513 to mean "immediate cause of death" and not also "underlying cause of death" and therefore finding Appellees did not fraudulently conceal [Decedent's] cause of death so as to toll the statute of limitations[?]

Whether there are genuine issues of material fact regarding Appellants' "reasonable diligence" in uncovering [Decedent's] cause of death[?]

Appellants' Brief at 9.

Appellants challenge an order that entered summary judgment in favor of Dr. George and Dr. Ezi-Ashi. The principles we apply in reviewing such an order are well established:

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

The entry of summary judgment is proper whenever no genuine issue of any material fact exists as to a necessary element of the cause of action. The moving party's right to summary judgment must be clear and free from doubt. We examine the record, which consists of all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party.

*Krapf v. St. Luke's Hosp.*, 4 A.3d 642, 649 (Pa. Super. 2010) (internal citations omitted), *appeal denied*, 34 A.3d 831 (Pa. 2011).

Under the Medical Care Availability and Reduction of Error Act (MCARE Act), "wrongful death claims under 42 Pa.C.S.A. § 8301 and survival claims under 42 Pa.C.S.A. § 8302 must be commenced within two years after the death, unless there is fraudulent misrepresentation or concealment as to the cause of death." *Matharu v. Muir*, 86 A.3d 250, 263 (Pa. Super. 2014) (*en banc*); *see also* 40 P.S. § 1303.513(d).[2] In *Matharu*, this Court said that the period within which a claim must be filed under § 1303.513(d) begins to run when the cause of action accrues, which is the date of death. *See Matharu*, 86 A.3d at 263 ("In other words, the two-year time period under [§ 1303.513(d)] does not begin to run until the injury (death) occurs, unless there is fraud relating to the cause of death, in which case the two-year period is tolled until the plaintiff knows or reasonably should have known of the cause of death."), *citing Krapf* 4 A.3d at 649. In the present case, Decedent died on January 2, 2007 but Appellants did not commence their action against Appellees until January 28, 2011. Hence, the trial court

---

[2] Section 1303.513(d) provides a two-year limitations period for medical professional liability claims asserted in the context of a wrongful death or survival action. It states:

> **(d) Death or survival actions.--**If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.

40 P.S. § 1303.513(d).

determined that the limitations period expired before Appellants initiated suit.

Appellants' position is that the trial court erred in concluding that the statute of limitations barred their wrongful death and survival claims.[3] Specifically, Appellants assert that the term "cause of death," as used in § 1303.513(d), embraces the concept of an "underlying cause of death" which includes not just the disease, injury, or complication that directly precedes death but also a disease or injury that ignites a sequence of events that produces death. *See* Appellants' Brief at 27. Relying on this expanded conception of the term "cause of death," Appellants argue that the failures of Dr. Ezi-Ashi and Dr. George to inform, follow, and refer Decedent for treatment of her abdominal aortic aneurism from December 2003 until January 2, 2007 constituted fraudulent concealment of Decedent's cause of death which tolled the two-year limitations period in this case. Appellants add that Appellees' production and dissemination of documents that characterized Decedent's 2003 test results as "normal" served as "continued misrepresentation" of Decedent's condition, which further tolled the statute of limitations. Appellants' contentions are inconsistent with relevant Pennsylvania case law.

---

[3] The issues raised in Appellants' claims are interrelated and we shall address them in a single discussion.

In *Krapf*, this Court considered the applicability of the fraudulent concealment doctrine in the context of wrongful death and survival actions. In that case, the estates of five patients filed wrongful death and survival actions against a hospital after a former nurse confessed to killing the patients. The hospital previously issued death certificates to the estates indicating causes of death consistent with the progression of the respective diseases for which the patients had received treatment. Thereafter, the nurse confessed to killing the patients. By the time the estates instituted claims against the hospital, however, the two-year limitations period had expired. On appeal, we affirmed the trial court's refusal to enter summary judgment in the hospital's favor.[4] We observed that the doctrine of fraudulent concealment applied when a defendant, who owes a duty to speak, commits an affirmative, independent act of concealment upon which a plaintiff justifiably relies. *Krapf*, 4 A.3d at 650, *citing **Lange v. Burd***, 800 A.2d 336, 339 (Pa. Super. 2002). Applying these principles, we concluded that the trial court correctly determined that the hospital fraudulently concealed the patients' causes of death by issuing death certificates indicating natural progression of underlying diseases, which induced the detrimental reliance of the estates. *Id.* at 650.

---

[4] The appeal in *Krapf* came before us by way of the hospital's petition for review under Pa.R.A.P. 1501 *et seq*.

We agree with the trial court's determination that the actions of Dr. Ezi-Ashi and Dr. George before January 2, 2007 did not constitute fraudulent concealment of Decedent's cause of death. Under settled case law, Appellants' wrongful death and survival causes of action accrued on January 2, 2007, the date on which Decedent died, and only fraudulent concealment of her cause of her death tolls the limitations period. *See Matharu*, 86 A.3d at 263. Since Appellees could not conceal the cause of a death that had not yet occurred, the trial court did not err in concluding that their actions prior to January 2, 2007 were irrelevant to application of the doctrine of fraudulent concealment.

We also reject Appellants' claim that alleged misstatements included within Decedent's medical records prepared and produced by Appellees are akin to the inaccurate death certificates issued by the hospital in *Krapf* and, therefore, constitute fraudulent misrepresentation of the cause of Decedent's death. In disposing of this contention, the trial court reasoned as follows:

> [Appellants] further contend that [Decedent's medical] records contained a false statement similar to the incorrect statements at issue in *Krapf*. In *Krapf*, the decedent-victims were killed by a nurse administering harmful doses of certain medications. *Krapf*, *supra*, at 645-658. Prior to the nurse's confession that he killed the patients, the hospital issued death certificates to the decedent-victims' estates "indicating causes of death consistent with the progression of the respective diseases for which the patients had been receiving treatment." *Id*. at 648. [This Court] relied on the trial court's reasoning that the incorrect statement, albeit unintentional, prevented the plaintiffs from knowing the decedent-victims' true cause of death. *Id*. at 651.

> The statement at issue here is that a CT scan was noted as being "normal" when it actually showed the presence of an abdominal aortic aneurysm. Unlike the plaintiffs in **Krapf**, however, [Appellants] here knew the cause of death – a ruptured abdominal aortic aneurysm – on the date on which Decedent died. This cause of death has not changed since January 2, 2007; nor have any of the records recovered during discovery indicated a different cause of death. Additionally, since [Appellants] instituted this suit, on December 3, 2008, they have [confirmed] that the cause of death was a ruptured aortic aneurysm. Because [Appellants] knew the cause of death on January 2, 2007, the misstatement in [Decedent's medical records] does not toll the statute of limitations. Rather, it put [Appellants] on inquiry notice to determine what the CT scan showed and why there was a misstatement.

Trial Court Opinion, 12/17/14, at 12. Our review of the certified record and pertinent case law leads us to conclude that the trial court adequately and accurately addressed this issue. Hence, we reject Appellants' claim for the reasons set forth by the trial court.

In sum, we conclude that Appellees did not fraudulently conceal or misrepresent the cause of Decedent's death and that the two-year limitations period barred Appellants' wrongful death and survival claims against Appellees. In light of these determinations, we need not pass upon Appellants' third issue, which asks whether Appellants exercised reasonable diligence in discovering Appellees' possible role in bringing about Decedent's death. Accordingly, we affirm the entry of summary judgment in favor of Appellees.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2017